## SHEPARD v. THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY.

1. **Evidence:** ERROR IN ADMITTING: CURED BY CHARGE OF COURT. Error in admitting improper evidence is cured by an instruction which withdraws it from the consideration of the jury.

2. **Railroads:** EJECTION OF PASSENGER: MEASURE OF DAMAGES: INSTRUCTION. In this action for damages for being wrongfully ejected from the defendant's train, the court instructed: "When a passenger is wrongfully compelled to leave a train, and suffer insult and abuse, the law does not exactly measure his damage, but it authorizes the jury to consider the injured feelings of the party, the indignity endured, the humiliation, wounded pride, mental suffering, and the like, and to allow such sum as the jury may say is right." *Held*, especially in view of the whole charge, that this instruction was not subject to the objection that it authorized an allowance of exemplary damages; because damages may properly be allowed for mental suffering caused by indignity and outrage, whether connected with physical suffering or not, and such damages are compensatory, and not exemplary.

3. **New Trial:** MISCONDUCT OF COUNSEL: DISCRETION OF COURT. If it was misconduct on the part of the plaintiff's attorney, in his closing remarks to the jury, and in the absence of the judge, to comment upon a case which had been read to the court in the hearing of the jury, the granting of a new trial on that ground was a matter for the sound discretion of the trial court, whose action cannot be set aside without a showing of the abuse of that discretion. (See *George v. Swafford*, 75 Iowa, 491.)

*Appeal from Wapello District Court.*—Hon. Dell Stuart, Judge.

Filed, January 29, 1889.

Action to recover damages alleged to have been caused by wrongful acts on the part of defendant. The cause was tried to a jury, and a verdict and judgment rendered for plaintiff. The defendant appeals.

*Thos. S. Wright* and *McNett & Tisdale,* for appellant.

*Roberts & Epps* and *E. L. Burton,* for appellee.

Robinson, J.—The petition alleges that plaintiff, on the twenty-third day of August, 1886, procured of defendant a railway ticket from Ottumwa to Knoxville, Iowa, and return by way of Knoxville Junction; that on said day she took passage on a freight train of defendant, at Ottumwa, for the purpose of going to Knoxville; that when the conductor examined her ticket he agreed to notify her when to change cars, and to give her an opportunity to change cars at Knoxville Junction; that she at that time told the conductor that she was a stranger on the road; that she relied on said promise of the conductor, and remained on the train until it had gone two or three miles beyond Knoxville Junction, at which place the conductor stopped his train, and in a very rude and insolent manner, and by the use of rough and abusive language, compelled and forced plaintiff to leave the train, against her protest, in a steep and dangerous place in the road, with a heavy basket of baggage and her infant child; that the weather was intensely warm, and plaintiff was compelled to walk the distance back to Knoxville Junction, and carry her child in her arms, and leave the baggage by the roadside; that in consequence of what they were compelled to endure she and her child became sick, and she was compelled to give the child additional care,

watching and medicine; that by reason of said wrong-
ful acts of the conductor plaintiff suffered great bodily
pain and mental anguish; that she was thereby humili-
ated, insulted, and greatly wronged, and suffered dam-
ages in consequence in the sum of four hundred and
ninety-five dollars. The answer contains a general denial,
and alleges that if plaintiff received any injury, or suf-
fered any damages, they were the result of her own
negligence and wrongful acts, and that defendant is
in no manner responsible therefor. The verdict and
judgment were for the sum of three hundred dollars
damages.

I. The evidence submitted on the part of plaintiff
tended to sustain the allegations of her petition. Much
of it was objected to by defendant. Some
of the evidence offered by defendant to
prove its rules and customs in regard to car-
rying passengers on freight trains, and the
stopping of such trains at depots, was rejected. Coun-
sel for appellant discuss various questions based on the
rulings of the court in admitting and rejecting evidence,
which we do not find it necessary to consider in detail,
for the reason that the evidence as to which the rulings
were made was necessarily withdrawn from the consider-
ation of the jury by the charge of the court. The charge
specified the obligations and duties of defendant and its
employes in regard to stopping at stations, notifying
passengers when to change cars, and carrying them to
their destination. That was followed by this para-
graph: "These general duties of the railway company
are defined that you may have them out of the way.
They are not really involved in this case, and should not
have your attention further than you should not be
influenced by the arguments made in your presence con-
cerning them. The material question for you to deter-
mine is this: Did the conductor, in a rough and rude
manner, compel the plaintiff to leave the train, as
claimed by her?" The jury were also told that they
need not consider how plaintiff came to be carried past

1. EVIDENCE:
error in ad-
mitting: cured
by charge of
court.

JANUARY TERM, 1889.            57

Shepard v. The Chicago. R. I. & P. Ry. Co.

Knoxville Junction ; that they were to "consider all the evidence bearing on the question, and determine where and how plaintiff left defendant's train, and what the conduct of the conductor was towards her," that if they found that "plaintiff left the train at her own request, as claimed by the defendant, your verdict should be for the defendant;" and that, if they found for the plaintiff, they should not compensate her for injury to her health or the health of her child, nor for loss of time ; that her damage must be nominal, or based on the wrongful conduct of the conductor. Under these instructions, all evidence in regard to the management of the train, the neglect of duty by employes, and the obligation of passengers prior to the time the train left Knoxville Junction, was immaterial ; and if the instruction were followed, evidence of that character which was admitted could not have been considered by the jury. It would undoubtedly have been the better practice to exclude all improper evidence when offered, but it seems to have been admitted on the theory as to plaintiff's right of recovery, according to which the petition was drawn. Unless we adopt the rule that error in the admission of evidence cannot be cured during the trial, we are of the opinion that the judgment of the district court should not be disturbed on the grounds under consideration. It has been frequently, and we think properly, held that an error of that kind can be so cured. *Sullens v. Chicago, R. I. & P. Ry. Co.*, 74 Iowa, 659, and cases therein cited ; *State v. Schaffer*, 74 Iowa, 707 ; *State v. Postlewait*, 14 Iowa, 449. We discover no ground for believing that in this case the charge of the court was disregarded.

II. The plaintiff testified that after the train left Knoxville Junction the conductor asked her where she was going, to which she answered, "to Knoxville city ;" that he then said, "you ought to have changed cars at Knoxville Junction," to which she replied, "Why didn't you tell me when we were there?" that he then told her she must get off; that she refused to get off, and

expressed a desire to remain in the train until the next station was reached ; that the train was stopped, and the conductor asked plaintiff if she was going to get off, to which she answered that she was not, and that he would have to take her back to Knoxville Junction ; that the conductor thereupon told her with much profanity to get off, that if she didn't get off he would kick her off, that he was tired of "damn niggers," and that she must get off there ; that he threw her bundle off, and took her baby onto the ground, and that she finally followed ; that he left her standing on the track, and, as the train started, said, "I don't care a damn what you do." We have not given all nor the worst of the language alleged to have been used by the conductor. The testimony of plaintiff was corroborated by another witness. It is proper to say that all testimony of that character was denied by the conductor and by one other person, and that the evidence on the part of plaintiff was not in all respects consistent and satisfactory; but the witnesses testified in the presence of the jury, who were able to note the appearance of the witnesses, and their manner of testifying, and were therefore better able than we can be to judge of the weight to which the testimony of each witness was entitled. Under the well-known rules of practice, the verdict cannot be disturbed by us because of a doubt in our minds as to the preponderance of the evidence being with plaintiff.

The court gave to the jury the following as a part of its charge : " Where a passenger is wrongfully compelled to leave a train, and suffer insult and abuse, the law does not exactly measure his damage, but it authorizes the jury to consider the injured feelings of the party, the indignity endured, the humiliation, wounded pride, mental suffering, and the like, and to allow such a sum as the jury may say is right." That paragraph of the charge is criticised by counsel for appellant as authorizing an allowance by the jury of exemplary damages. It was held in *McKinley v. Chicago & N. W. Ry. Co.*,

2. RAILROADS: ejection of passenger: measure of damages: instruction.

44 Iowa, 315, that compensatory damages might be allowed for mental suffering, caused by outrage and indignity, and that it was proper to take into consideration the wounded feelings of the person who suffered the wrong. If these things may be considered in connection with physical suffering in estimating actual damages, we know of no reason which forbids their being considered in the absence of physical suffering. It is said that the "mental pain," contemplated by the court in the case last cited, includes something more than mere injured feelings or wounded pride, and that the latter can be considered only where malice is alleged and proven, and where there has been proof of actual bodily injury. We do not think the claim is well founded. Humiliation, wounded pride, and the like, may cause very acute mental anguish. The suffering caused would undoubtedly be different in different persons, and no exact rule for measuring it can be given. In ascertaining it much must necessarily be left to the discretion of the jury as enlightened by the charge of the court. The charge given in this case, as a whole, confined the jury to an allowance for compensatory damages.

III. Objections are made to some portions of the charge on the ground that, although they were correct as abstract statements of law, they were not applicable to the facts of this case. We do not think the objections are well founded. Some portions of the charge were more elaborate, perhaps, than the case required, but the portions, to which the objections we are considering were made, were designed to make clear to the jury the law which should govern their deliberations.

IV. An attorney for the appellee, during his closing remarks to the jury, commented upon a case which 3. New trial; misconduct of counsel: discretion of court. had been read to the court in the hearing of the jury. Appellant alleges that in this there was misconduct, and made it a ground of its motion for a new trial. The comments were made during the absence of the judge, and do not seem to have been called to his attention until after the cause had

been submitted to the jury, a verdict returned, and a
motion for a new trial filed.   The matter of which com-
plaint is made was argumentative in its character, and
was not an attempt to strengthen the case of plaintiff
by stating alleged facts pertinent to the issues, but not
sustained by the record.   Under these circumstances, if
there was in fact misconduct as charged, no abuse of the
discretion of the court in refusing to set aside the ver-
dict on that ground is shown.   *George v. Swafford*, 75
Iowa, 491.   We discover no sufficient reason for rever-
sing the judgment of the court below.   It is therefore
                                        AFFIRMED.