ALBERT ANDRESEN et al., Appellees, v. VERNON ANDRESEN et al.

IN RE CHARLES P. DENISON, District Court Clerk, Appellant.

No. 42538.

DECEMBER 28, 1934.

REHEARING DENIED APRIL 5, 1935.

Snell Bros., for appellant.

Bell & Level and Salinger, Reynolds & Meyers, for appellees.

ALBERT, J.—To a clear understanding of the questions involved, an extended statement is necessary.

It appears from the record that in February of 1930 an action was commenced under the title which this case bears, the plaintiffs alleging that the defendants were indebted to them in the sum of $1,600, and, on the filing of the petition therefor, a landlord's writ of attachment was issued. On the 12th of August following, the defendants deposited with the clerk of the court the sum of $1,525, and on the 17th of September following the clerk wrote the plaintiffs' attorneys advising them that that sum had been paid in to his office as a tender, subject to order of the court. On the next day the plaintiffs dismissed their action and, on the same date, commenced another action asking judgment for the same amount for rentals due the plaintiffs. On November 30, 1931, the defendants filed an answer admitting that they were indebted in the sum of $1,525, claiming an offset in the sum of $75 for plowing done on the place. Issues were joined in this latter action, and one of the issues was whether or not a good and valid tender was made.

The case went to trial, and in the trial it developed that the plaintiffs were the owners of four-fifths of the land under lease. The jury returned a verdict in favor of the plaintiffs in the sum of $1,220. This trial occurred in December, 1931, and thereupon the clerk entered judgment against the defendants for the last-named amount. In the aforesaid trial, and on the question of due tender, the clerk of the court (Charles P. Denison) was called as a witness, and as such witness testified that he had "in his hands" the aforesaid amount of $1,525 paid in by the defendants in the action.

On February 24, 1932, the defendants filed a motion to vacate and set aside said judgment, insisting that, under the circumstances, the jury having found the tender good, no personal judgment should have been entered against the defendants. This motion was resisted, and apparently was submitted to the court without any evidence being taken in the matter, and, on the 17th of June, 1932, the court having sustained the motion for vacation of the first-named judgment, it thereupon entered a new judgment, which recited that plaintiffs were adjudged to be the owners of, and entitled to receive from the clerk of the court of the moneys brought into court by the

defendants and deposited with the clerk, the sum of $1,220; and costs were taxed to the plaintiffs, and no personal judgment was entered against the defendants. In its findings in relation to said last-named judgment, which are made a part of this record, the court refers to the testimony of the clerk given in the original hearing, and says: " * * * notwithstanding that the clerk testified on the trial that the money was still in his hands. Whatever be the real facts, the verdict of the jury involved a finding that the money was still intact in the clerk's hands at the time defendants answered, pleading tender and deposit, and such finding was warranted by the testimony. By this finding the court is bound." No appeal whatever was taken from this latter finding and judgment.

In October, 1932, the plaintiffs commenced the instant proceedings, under section 11608 of the Code, asking an order of court directing the clerk to turn over to the plaintiffs the aforesaid sum of $1,220, alleging that he had failed, refused, and neglected to turn over said money as ordered by the court in said judgment. In this proceeding the clerk answered and resisted said application, and, among other things, set up by way of resistance that, when the original defendants came into his office, they gave him a check for $1,525, payable to him as clerk of the court and drawn on the Anderson, Lipton & Company bank of Ida Grove; that he deposited said check with the First Trust & Savings Bank of Ida Grove; that he carried depositary accounts in both banks in two forms, one as "clerk of the district court public fund account" and the other as "clerk"; that the Anderson, Lipton & Company bank made an assignment for the benefit of creditors on August 18, 1931, and the First Trust & Savings Bank closed for business on October 17, 1931, when a receiver was appointed; and that the funds thus deposited with him as a tender were in one or the other of said banks when same went into the hands of a receiver. Plaintiffs replied to this resistance, alleging, among other things, that, on account of the testimony that the clerk gave in the original trial, he was estopped from asserting the matter set up in his resistance. A hearing was had thereon before the court in which the clerk tendered evidence to sustain the matters set up in his resistance. All of this line of testimony was objected to on the part of the plaintiffs on the ground that the same is incompetent, irrelevant, and immaterial, does not tend to prove any matter in issue, and does not afford any excuse for noncompliance with the previous order made by the court. At

the close of the testimony, the court entered judgment, on the 23d day of August, 1933, reciting that the plaintiffs "do have and recover of and from Charles P. Denison, in his own proper person and Charles P. Denison as Clerk of the District Court of Ida County, Iowa, the sum of $1,220.00, with interest thereon from the 13th day of June, A. D. 1932, at six per cent per annum, and for the costs of this proceeding."

The question, therefore, before us for consideration, is whether or not this clerk is liable to the plaintiffs for the aforesaid amount, under the circumstances. Primarily, the liability of clerks of courts for funds in their hands, deposited in banks which failed, was settled in this court in the case of Prudential Ins. Co. v. Hart, 205 Iowa 801, 218 N. W. 529, and also the case of Northwestern Mfg. Co. v. Bassett, 205 Iowa 999, 218 N. W. 932, and the ruling in these cases must control the ruling in this case, unless it be that the clerk is precluded from taking advantage of the rule in these cases by reason of the testimony he gave in the original submission of this case.

Adverting to the testimony which the clerk gave in said case, he testifies that the check made by the plaintiffs, which represented the tender, was made payable to him as clerk, and that he cashed the check; and he testifies that, at the time of giving his testimony, the money "is in my hands as clerk of the district court." We are cited to some authority by both parties on the meaning of the phrase used by the clerk, "in my hands." After reading the authorities cited, while it may be conceded that the phrase is, in a sense, colloquial, as claimed by the appellant, we think that, in its setting in this case, it has the general and ordinary meaning of the phrase, and means that the clerk, at that time had the money available for use in the trial, and that that would be the usual and ordinary understanding of any one who was present and heard the expression used. In other words, it was understood by this testimony that, had the clerk been called upon at that time to produce the funds, they were in his possession in the sense that he could have then and there produced the same in court. In addition to this, if the meaning is doubtful, the finding of the trial court as to what the parties thereby intended and what the words mean is a pure finding of fact and binding on this court. Such is the holding in First National Bank v. Bowers, 141 Cal. 253, 74 P. 856, and Slama Tire Protector Co. v. Ritchie, 31 Cal. App. 555, 161 P. 25.

We therefore conclude that the aforesaid statement of the clerk was material to the issue, and, this being a special proceedings, the finding of the trial court that such was the meaning is binding on us, under the above rule.

We then meet the real question of contention between these parties as to whether or not the doctrine of equitable estoppel applies in a case of this kind. It appears from the record that the original judgment was a personal judgment against the defendants; and that, because of the testimony of the clerk in relation to this matter, the court set aside the original judgment and entered only a judgment *in rem*, or an order on the clerk to pay over to the plaintiffs the sum of $1,220. The judgment was never appealed from, and, of course, must be accepted by us as a verity. In addition to the order made in the second judgment, directing the clerk to turn over this money, this special proceedings was had, resulting in a second order on the clerk to turn over said funds to the plaintiffs; and the question is whether or not, because of the fact of the clerk's having been a witness in the original proceedings and having testified as above set out, he is now permitted in this proceedings to set up the loss of said money in a bank or banks that failed. The appellant asserts that the clerk was not a party to the proceedings prior to the commencement of the present special proceedings, and that, therefore, whatever orders may have been entered prior to this proceedings, they are not binding on him. It seems to be a well-settled rule that, where a witness gives testimony in a proceedings to which he is not a party, in a subsequent suit to which he is a party he is not permitted to change his testimony if it would operate to the prejudice of the party claiming an estoppel who has acted in reliance thereon. This rule seems to be of quite universal application. We recognized it in this state in Hoyt v. Hoyt, 68 Iowa 703, 28 N. W. 27. The rule is stated in 21 C. J. p. 1236, note 44, where cases from various other jurisdictions are cited supporting this doctrine. Applying this rule to the fact situation heretofore devoloped, it appears from the record that, because of the testimony given by the clerk on the original trial, the court, on the proceedings to modify the original judgment, took from the plaintiffs what they originally had, to wit, a personal judgment against the defendants, and substituted therefor a judgment against the alleged funds in the hands of the clerk. This, of course, was much to the prejudice of the plaintiffs, and therefore we are of the opinion

that the plaintiffs were prejudiced by said action brought about by reason of the testimony given by the clerk in the original case, and therefore he cannot, in this proceedings, avail himself of the alleged defense set up by him, to wit, that he lost the money in failed banks. The conclusion of the district court was in accord with this view, and we agree with it.—Affirmed.

MITCHELL, C. J., and EVANS, KINDIG, and DONEGAN, JJ., concur.